IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-01212-SKC

YEON SIK KIM

    Plaintiff,

v.

KEVIN MCALEENAN, *et al.*,

    Defendants.

---

**ORDER RE: DEFENDANTS' MOTION TO REMAND [#12]**

---

    This Order addresses Defendants' Motion to Remand to U.S. Citizenship and Immigration Services for Decision ("Motion"). [#12.][1] Plaintiff filed a Response [#23], which was followed by Defendants' Reply [#24.] The Court has reviewed the Motion, the related briefing, and the relevant law. No hearing is necessary. For the following reasons, the Motion is DENIED.

### A. BACKGROUND

    Plaintiff, Yeon Sik Kim ("Kim"), is a citizen of South Korea who currently resides in Colorado. [#1.] In May 2009, he married Chun Kim, a U.S. citizen. [*Id.* at ¶13.] In August 2009, the couple filed an immigration visa petition to receive an immigrant approval for Kim as the spouse of a U.S. citizen. They also filed an application for lawful permanent residency. [*Id.* at ¶¶14-15.] In May 2010, the U.S. Citizenship and

---

[1] The Court uses "[#___]" to refer to specific docket entries in CM/ECF.

1

Immigration Services ("the Agency") approved Kim's application for adjustment of his immigration status to lawful permanent resident. [*Id.* at ¶16.] However, because the couple had been married for less than two years at the time, the approval was "conditional." [#23 at p.3.] In May 2012, the couple filed an I-751 petition ("I-751") to remove the conditional status, and in September of that year, the Agency removed the conditions. [*Id.* at pp.3-4.] The couple ultimately divorced in January 2013.

On March 23, 2015, Kim filed an N-400 Application for Naturalization ("N-400") with the Agency. [#1 at ¶20.] He attended a naturalization examination on January 4, 2016. [*Id.* at ¶27.] The following day, the Agency requested additional information about Kim's divorce, to include a copy of the divorce petition. [#12 at p.3.] Kim provided the requested documents to the Agency prior to February 4, 2016. According to the Agency, the divorce petition contradicts Kim's representations in the I-751—the divorce petition indicates the couple separated in February 2011 and that Kim's wife was living in Oklahoma.

Having heard nothing from the Agency concerning the status of his application, Kim inquired with the Agency in May 2017 and March 2019. [#1 at ¶¶33-34.] On April 1, 2019, the Agency told Kim that his N-400 application was neither approved nor denied. [*Id.* at ¶35.] On April 25, 2019, Kim brought this action under 8 U.S.C. § 1447(b) for a judicial determination of his N-400 application. [#1.]

Over two months after Kim filed this lawsuit, on June 19, 2019, the Agency issued a Notice of Intent to Deny ("NOID"), informing Kim that it intended to deny his N-400 application based on alleged misrepresentations he made in his I-751 and during

2

his examination regarding the status of his marriage—misrepresentations which the Agency found precluded a necessary finding of good moral character. [#12 at p.3.] By agreement of the parties, however, the Agency withdrew the NOID pending the outcome of the Motion. [*Id.*] The Agency has indicated that if this case is remanded, it will re-issue the NOID in short order. [*Id.* at n.1.]

### B.  ANALYSIS

**1.    The 120-day Period under § 1447**

Before a person may become a naturalized citizen of the United States, they must apply for citizenship and undergo a personal investigation conducted by a designee of the Attorney General. 8 U.S.C. § 1446. The investigation includes an examination of the applicant by the designee. *Id.* at § 1446(b). The designee then must either grant or deny the application (providing the reasons in support of the decision) within 120 days from the date of the examination. *Id.* at § 1447(b). "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted . . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." *Id.* The district court then "has jurisdiction over the matter and may either determine the matter or remand" it with instructions. *Id.* The purpose of § 1447(b) is "to reduce the waiting time for naturalization applicants." *United States v. Hovsepian*, 359 F.3d 1144, 1163 (9th Cir. 2004) ((citing H.R. Rep. No. 101–187, at 8 (1985); 135 Cong. Rec. H4539–02, H4542 (1982) (statement of Rep. Morrison)).

3

## 2. The Agency's Three-Year Delay

Kim's examination occurred on January 4, 2016. The Agency, therefore, was required to make its determination on his application no later than May 3, 2016. When Kim filed this case, the 120-day period had lapsed by 1,087 days, or three years. Despite the significant delay, the Agency argues that it is now prepared to issue a final determination within 107 days of a remand order by this Court. [#24 at p.3.] Kim argues, however, that this case should not be remanded considering the equities of the case, namely the Agency's extraordinary delay and the likelihood that his application will be denied.

The Agency further argues that remand would allow it to "fulfill its statutory obligation to adjudicate naturalization applications in the first instance, and to fully develop an administrative record." [#12 at p.6.] The Court is aware that most courts who choose remand have relied on this rationale. *See, e.g., Israileva v. Chertoff*, No. 8:07-cv-21-T-27MSS, 2008 WL 1766663, *1 (M.D. Fla. Apr. 17, 2008) ("Ordinarily, with respect to immigration matters, 'a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.'") (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)); *Sallam v. Mukasey*, No. 07-11380-RWZ, 2008 WL 687409, *1 (D. Mass. Mar. 5, 2008) (remanding for resolution within 30 days, and noting that further hearing before immigration officer would develop the administrative record); *Hussain v. Chertoff*, 486 F. Supp. 2d 196, 200 (D. Mass. 2007) (noting that "[t]he court would generally prefer that USCIS, the expert agency charged with the primary responsibility, decide the merits of an application for naturalization," but adjudicating case on the merits where

4

government no longer sought remand); *Farooq v. Hansen*, No. 1:07 CV 0946, 2007 WL 2177890, *4 (N.D. Ohio July 27, 2007) (noting that "an order of remand comports with Congressional intent that CIS make the initial determinations regarding naturalization applications"); *Khelifa v. Chertoff*, 433 F. Supp. 2d 836, 844-45 (E.D. Mich. 2006) (returning application to USCIS for resolution "comports with the 'ordinary remand' rule, under which the courts generally should defer to agencies that bear the statutory obligation to make the initial determination on particular matters within their presumed expertise and delegated authority").

The rational seems paramount in cases where the FBI background check was not yet complete or where the Agency had yet to resolve security concerns. *See, e.g., Alhamedi v. Gonzales*, No. 07 Civ. 2541(JGK), 2007 WL 1573935, *3 (S.D.N.Y. May 30, 2007) ("nearly every court confronting this question has agreed . . . that it would be inappropriate to adjudicate a naturalization application in the absence of a completed FBI background check" and remanding with instructions that FBI should expedite a name check); *Al Saleh v. District Director, USCIS Detroit*, No. 06-13372, 2007 WL 925693, *3 (E.D. Mich. Mar. 28, 2007) (remanding to USCIS where FBI had failed to complete security background check, and noting agency expertise in deciding naturalization applications); *Issa v. Mueller*, 486 F.Supp. 2d 668, 674 (E.D. Mich. 2007) (same and citing cases).

Several cases cited by the Agency suggest the same.[2] For example, in *Moreno v.*

---

[2] The Agency cites *Borski v. Lynch*, No. 16–cv–00924–RM, 2017 WL 1153997 (D. Colo. Mar. 27, 2017) for the proposition that remand is appropriate when an agency is prepared to render a decision. [#12 at p.5.] But the court in *Borski* did not decide the issue of

5

*Nielson*, No. 17-cv-3146-WJM-MJW, 2018 U.S. Dist. LEXIS 89479 (D. Colo. May 30, 2018), the agency took no discernable action on the plaintiff's application for over a year. After the plaintiff initiated his case in this district, the agency explained that the delay was due to recent receipt of new information concerning plaintiff's criminal history and a limited diplomatic relationship with the plaintiff's country of origin. *Id.* at *4. In deciding to remand the case, the court concluded that the agency was in a better position to evaluate the new information. *Id.* Similarly, in *Antonishin v. Keisler*, 627 F.Supp.2d 872, 877 (N.D. Ill. 2007), the court concluded that remand was appropriate where the claimant's FBI background check was incomplete. *Id. See also Aboeleyoun v. U.S. Citizenship & Immigration Servs.*, No. 07-cv-01927-LTB, 2008 WL 1883564 (D. Colo. Apr. 25, 2008) (remanding in light of a pending FBI background check and the significant security concerns underlying naturalization); *Sabir v. U.S. Citizenship & Immigration Servs.*, No. 07-cv-00914-WYD-MJW, 2008 WL 762242 (D. Colo. Mar. 19, 2008) (remanding case where FBI background check was incomplete and observing that courts lack the expertise to conduct a criminal background check and determine whether a petitioner is a security risk).

Despite the weight of authority which bends toward remand, "the instances when a court should determine itself the matter of an applicant's naturalization should be reserved 'for those rare circumstances in which CIS <u>unnecessarily</u> delays the adjudication of an application.'" *Borski v. Lynch*, No. 16-CV-00924-RM, 2017 WL 1153997, at *5 (D. Colo. Mar. 27, 2017) (quoting *Ajlani v. Chertoff*, 545 F.3d 229, 240 (2d Cir. 2008)) (emphasis in original). The Court finds that this case presents that rare circumstance.

---

remand; rather, it dismissed the plaintiff's mandamus petition based on mootness.

In the present case, the Agency has not indicated the delay was attributable to an ongoing FBI background check or other specific or profound investigative step. Indeed, the NOID it issued (and later withdrew) was based simply on alleged false statements and misrepresentations Kim made concerning his marriage; information the Agency had in its possession since at least February 2016. The Agency claims it was not sitting idle during the three-year delay. But even then, it only vaguely asserts it was "conduct[ing] an investigation" for three-years after Kim's examination. This is too cursory an explanation to allow the Court to conclude that the significant delay was necessary. While the Court does not expect the Agency to reveal details regarding its investigation, the mere assertion of "conducting an investigation" lacks the type of specificity offered by the agency in cases like *Moreno* or *Antonishin*, which allowed those courts to gauge the bases, and thus necessity, of the delay. Given that the district court has jurisdiction over this matter and the Agency asks the Court to relinquish the same, the Court requires more concrete justification for such a significant delay than the mere naked assertion that the Agency was "conducting an investigation" for three-years.

To be clear, the Court does not attribute bad faith on the part of the Agency concerning the delay; the Court merely finds that the Agency has not proffered sufficient justification to allow the Court to determine that the lengthy delay was necessary. *See Shalan v. Chertoff*, No. 05-10980-RWZ, 2006 WL 42143 (D. Mass. Jan. 6, 2006) (denying motion to remand where "defendants offer[ed] no reasons specific to plaintiff for the extensive time expended in completing review of his application"). Under these circumstances, "the extreme delay that has occurred in this case is intolerable by any

standard." *Attisha v. Jenifer*, No. 07-CV-10345, 2007 WL 2637772, *3 (E.D .Mich. Sept. 6, 2007).

### 3. Retaining Jurisdiction Promotes Judicial Efficiency

Kim argues the district court should retain jurisdiction because he will inevitably return to federal court based on the Agency's notice of its intent to deny his application. The Agency, citing *Marron v. Napolitano*, No. 11-cv-00861-WJM-KLM, 2011 WL 6032930 (D. Colo. Dec. 5, 2011), argues that Kim's position in this regard amounts to speculation and conjecture. In *Marron*, the plaintiff argued that the court should retain jurisdiction because "it was very likely that the agency will deny [her application], which will result in a process that will undoubtedly end up" back in federal court. *Id.* at *1. The court disagreed and concluded that the plaintiff's argument was "little more than assumption." *Id.* at *2. As contrary authority, Kim relies on *Hamdan v. Chertoff*, 626 F. Supp. 2d 1119 (D.N.M. 2007). There, the District of New Mexico retained jurisdiction over the plaintiff's case in part because the agency had issued its denial of the naturalization application. The *Hamdan* court reasoned that remanding the matter would not conserve judicial resources because it was nearly inevitable that the plaintiff would seek *de novo* review of the denial pursuant to 8 U.S.C. §1421(c), and thus, the case would return to federal court.

The facts before this Court are distinguishable from both cases; nevertheless, the Court is persuaded that this matter more closely resembles *Hamdan*. Unlike the plaintiff in *Marron*, Kim has been told in no uncertain terms that the Agency intends to deny his N-400. Granted, the Agency has not issued a final denial as in *Hamdan*, but it has

unequivocally stated its intent to do so.[3] Thus, a remand for a final determination by the Agency "would only serve to further delay the district court's review of this matter and add an additional layer of administrative review through the administrative appeal process in a case where Plaintiff[] [has] already been subjected to a lengthy delay." *Yith v. Nielsen*, 343 F.Supp.3d 938, 949 (E.D. Cal. 2018). Judicial efficiency would not be served by remanding to the Agency "for the likely issuance of a denial . . . ." *Id.* Under the circumstances here, whether the Court retains jurisdiction or remands, "the result will most likely be the same: A trial in federal court." *Hamdan*, 626 F.Supp.2d at 1139-40. In its discretion, the Court declines to add those additional layers of administrative review in the face of an already protracted and unnecessary delay.

The Agency also argues that the district court is ill-equipped to adjudicate this matter due to the Agency's expertise in the area and because Kim will bear the burden to establish his eligibility for naturalization, meaning this matter will not be limited to the issue of his alleged misrepresentations concerning his marriage. First, the NOID only raises Kim's "good moral character" as a disqualifying factor. This suggests that, upon Court order, the Parties should be able to stipulate to as many of the INA § 316 factors [#12-1] that are not materially in dispute based on the Agency's extended (and apparently, now completed) investigation. *See Kahn v. Chertoff*, No. C08-1448 RSM, 2009 WL 54236, at *3 (W.D. Wash. Jan. 6, 2009) (finding the matter was not "the type of case where the

---

[3] The Agency argues that a final denial of Kim's N-400 is not a foregone conclusion because, upon re-issuance of the NOID after remand, Kim will have a chance to submit additional information for its consideration. The Court finds this argument speculative as to the potential result in the event Kim submitted additional information.

Court or the parties do not have all of the information needed to adjudicate an application."). Indeed, as a party to this case, the Agency "'can utilize its expertise by presenting its findings to the court.'" *Taalebinezhaad v. Chertoff*, 581 F. Supp. 2d. 243, 246 (D. Mass. 2008) (quoting *Etape v. Chertoff*, 497 F.3d 379, 387 (4th Cir. 2007)). Second, the district courts were the original caretakers of the naturalization process until Congress established "a system of administrative naturalization" with the Naturalization Amendments of 1989 to "streamline" the process. *Hamdan*, 626 F.Supp.2d at 1127. And third, to the extent the ultimate decision turns solely on assessing Kim's "good moral character," district courts are well-versed in assessing witness credibility, which is part-and-parcel of a character analysis.

Judicial efficiency does not favor remand.

**4.      Statutory Construction Supports Retaining Jurisdiction**

The plain language of a statute is the starting point for statutory construction. *Hamdan*, 626 F. Supp. 2d at 1126. The plain language of § 1447 reads: "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted . . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." 8 U.S.C. § 1447. The district court then "has jurisdiction over the matter and may either determine the matter or remand" it with instructions. *Id.*

"[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal quotations omitted).

10

When a statute's words are clear and unambiguous, courts "should stick to our duty of enforcing the terms of the statute as Congress has drafted it." *United Kingdom Ministry of Defence v. Trimble Navigation Ltd.*, 422 F.3d 165, 171 (4th Cir. 2005) (internal quotations omitted). *See Public Lands Council v. Babbitt*, 167 F.3d 1287, 1314 (10th Cir.1999) ("In examining ... [statutory] language, we assume that the words chosen by Congress are employed in their ordinary sense and accurately express Congress' [ ] legislative purpose."), *aff'd* 529 U.S. 728 (2000).

Congress expressed the intent to afford district courts jurisdiction over naturalization applications where the Agency fails to make a determination under § 1446 before the end of the 120-day period. The purpose of the time requirement is "to reduce the waiting time for naturalization applicants." *Hovsepian*, 359 F.3d at 1163. Here, only <u>after</u> Kim filed this lawsuit did the Agency issue the NOID and claim it had finally completed its investigation, three years later. Because the Court finds the delay was unnecessary and significant, to remand this matter would render the 120-day period in § 1447 superfluous and would itself lead to an absurd result that ignores the statutory intent. *See In re Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643 (1978) (a court may not disregard the statute's plain language unless a literal application of the language "would lead to absurd results ... or would thwart the obvious purpose of the statute") (internal quotations omitted). Under the circumstances of this case, the Court's exercise of its discretion under § 1447 to determine this matter is further supported by statutory construction.

## C. CONCLUSION

For the above-reasons, Defendants' Motion to Remand is DENIED. [#12.] The Court shall retain jurisdiction over Kim's N-400 application as provided by 8 U.S.C. § 1447(b).

IT IS ORDERED that this matter is set for a Scheduling Conference on March 24, 2020, at 11:00 A.M. in Courtroom C201 before Magistrate Judge S. Kato Crews. The parties shall submit their proposed scheduling order on or before March 17, 2020. In addition to filing the proposed order, a Word version shall be emailed to Crews_Chambers@cod.uscourts.gov.

DATED:     March 3, 2020

BY THE COURT

_____
S. Kato Crews
United States Magistrate Judge